UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| BRETT F. WOODS AND KATHLEEN VALDES, FOR THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | §<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| vs. | §<br>§ | |
| STANDARD INSURANCE COMPANY, AN OREGON INSURANCE COMPANY, MARTHA QUINTANA, A NEW MEXICO RESIDENT, AND THE STATE OF NEW MEXICO GENERAL SERVICES DEPARTMENT RISK MANAGEMENT DIVISION, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. NO. _____ |
| Defendants. | §<br>§ | |

## NOTICE OF REMOVAL

Defendant Standard Insurance Company ("Standard"), for the purpose only of removing this cause to the United States District Court for the District of New Mexico, states:

## I. NATURE OF THE CASE

Plaintiffs Brett F. Woods ("Woods") and Kathleen Valdes ("Valdes") filed this suit individually and on behalf of a proposed class seeking a refund of premiums paid for life and accidental death and dismemberment ("AD&D") insurance coverage under a group insurance policy ("Policy") issued by Standard. Standard issued the Policy to the State of New Mexico General Services Department to provide life and AD&D coverage to eligible employees of the State of New Mexico ("State"). There are a variety of conditions precedent to coverage taking effect under the Policy, including that the employee provide and Standard approve Evidence of Insurability ("EOI") for supplemental and late-enrollment insurance.

Plaintiffs, apparently based on recent media reports about a dispute which arose over the claims of two unrelated State employees, have filed this Lawsuit against Standard alleging "on information and belief" that they were not fully advised they needed to provide EOI and therefore have paid premiums for which they allegedly received no insurance coverage. Plaintiffs have sued Standard seeking a refund of their premiums or, alternatively, a declaratory judgment and injunction that Standard must provide the coverage for which they enrolled. Although they are tangential to the dispute and no significant relief is sought from them, Plaintiffs have also named as Defendants the State and an individual employee of Standard, Martha Quintana ("Quintana"), for no apparent purpose other than to prevent removal to this Court.

## II.  BACKGROUND AND PROCEDURAL HISTORY

### A.   THE POLICY

Standard issued the Policy to the State effective July 1, 2007.   [Complaint ¶ 24; Klinkhammer Decl.[1] ¶ 1, Ex. A.]   The Policy provides Basic Life, Additional Life, Dependent Life, and AD&D insurance coverage to eligible employees of the State.   [Complaint ¶¶ 1, 18; Klinkhammer Decl. ¶ 2, Ex. A.]   All the coverages under the Policy require the employee to meet a number of eligibility requirements to "Becom[e] Insured," including, among other things, being an active employee in certain defined employment classes, working at least 20 hours each week and being hired for a minimum term of six months or being an active legislator, and not

---

[1] The Declaration of Marty Klinkhammer is attached as Exhibit 1.  The Court may consider documents referenced in the Complaint or central to the claims, even if not expressly incorporated by reference.  *See Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009) (in considering a motion to dismiss under rule 12(b)(6), the court may consider documents referenced in complaint); *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384-85 (10th Cir. 1997) ("[F]actual allegations that contradict ... a properly considered document are not well-pleaded facts that the court must accept as true").

being in the armed forces. [Klinkhammer Decl. ¶ 2, Ex. A at 1.] Another eligibility requirement for certain life insurance coverage is for Standard to receive and approve EOI, which requires the employee to complete and sign a Medical History Statement, sign a medical authorization, undergo a physical examination if required, and provide any additional information Standard may require. [Klinkhammer Decl. ¶ 2, Ex. A at 31.] Under the terms of the Policy, some Basic Life and supplemental coverages do not take effect unless and until Standard receives and approves EOI. [Klinkhammer Decl. ¶ 2, Ex. A at 1-3, 9-10, 12, 31.]

**B.      RECORDS OF POLICY PREMIUMS AND ELIGIBILITY**

The Policy is a self-administered, summary-billed group insurance policy, meaning the State's General Services Division ("GSD") as the policyholder maintains all members' records with respect to eligibility, enrollment, and premium contributions. [Klinkhammer Decl. ¶ 3, Ex. A at 31; Complaint ¶ 2.] GSD collected premiums for employee-paid coverages by payroll deduction and remitted all premiums for both basic benefits and supplemental coverages to Standard. [Complaint ¶ 2; Klinkhammer Decl. ¶ 3.] Summary billing means that the State submitted consolidated premium payments on a lump-sum basis without any details identifying who paid the premium, when they were employed, what coverage they had elected, when they elected any coverage, or any other details regarding eligibility to "Becom[e] Insured" under the Policy. [Complaint ¶ 2; Klinkhammer Decl. ¶ 4, Ex. A at 31.] Because the group is summary-billed, Standard does not have contemporaneous records reflecting whether any employee has "Becom[e] Insured," or conversely is no longer insured, under the terms of the Policy. [Klinkhammer Decl. ¶ 5.]

**C.   STANDARD'S ROLE**

Standard fully insured benefits under the Policy. [Complaint ¶ 18; Klinkhammer Decl. Ex. A.] Standard also administered all claims for benefits under the Policy and had sole and exclusive authority to determine claims for benefits under the Policy. [Klinkhammer Decl. Ex. A at 27.] All premiums collected were remitted to Standard, and the State did not retain any premiums paid for the coverage under the Policy. [Complaint ¶ 2; Klinkhammer Decl. ¶ 7.] As such, if any premium had to be refunded under the Policy, Standard is the only entity that holds premiums. [Klinkhammer Decl. ¶ 7.]

**D.   THE INSURANCE SERVICES CONTRACT**

Standard and GSD entered into an Insurance Services Contract ("ISC") in connection with the Policy. [Complaint ¶ 18; Klinkhammer Decl. Ex. B.] Under the ISC, Standard agreed to provide insurance coverage as set forth in the Policy. [Complaint ¶ 19; Klinkhammer Decl. ¶ 8, Ex. B.] Standard also agreed to attend and participate in GSD's enrollment meetings, to develop enrollment and other materials, to present training materials to GSD's human resources personnel, and to provide an employee to provide account management and customer service to GSD. [Complaint ¶ 23; Klinkhammer Decl. Ex. B.] Other than providing resources to assist in administering the Policy, Standard was not responsible for obtaining and maintaining records of eligibility or any individual employee's elections and premium contributions. [Klinkhammer Decl. ¶ 8, Ex. B.]

**E.   ELIGIBILITY AND ENROLLMENT**

In addition to the Policy, the State and Standard published and distributed information describing eligibility and the necessary enrollment forms for Policy benefits. The Complaint

cites to the State of New Mexico Employee Benefit Handbook ("Handbook"). [Complaint ¶ 26.] The Handbook is publicly available on the General Services Department, Risk Management Division, Employee Benefits Bureau website located at www.generalservices.state. nm.us/rmd/.[2] [Verges Decl[3]. ¶ 2-3, Ex. A, C.] The first page of the Handbook provides that it is a "summary resource guide for all members," and for additional information to visit the website. [Verges Decl Ex. C.] With respect to the coverage from Standard, the second page of the Handbook provides a telephone number and website for Standard.[4] [Id. at 2.] Moreover, the second page of the Handbook answers basic questions about enrollment:

> 1. **When can I Enroll?**
>
>    A new employee has 31 days from the date of hire to elect any of the State of New Mexico's benefit packages. An employee can enroll in a benefit package within 31 days of incurring a "change of status." Open Enrollment allows an employee to enroll in a benefit that they may not have already selected.

[Id. at 2.] Page four of the Handbook cautions that it provides a "brief summary," and to "see your local Human Resource Office for the full RMD Administrative Manual." [Id. at 4.] The section of the Handbook regarding group life and AD&D through Standard echoes this statement regarding eligibility and enrollment: "Contact your Human Resources Representative for full details." [Id. at 38.]

The web site identified on page 1 of the Handbook links to the Administrative Guide

---

[2] The Court may take judicial notice of facts that are a matter of public record. See *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006)("facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment")(quoting *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001)).

[3] The Declaration of Keith Verges is attached as Exhibit 2.

[4] Standard's web page is located at www.standard.com/mybenefits/newmexico_rmd and can also be accessed via a link on the State's website.

("Guide"); in fact the link for the Guide is directly above the link for the Handbook.  [(Verges Decl. ¶ 4, Ex. D.]   The Guide provides that the Employee Benefits Bureau ("EBB") of the Risk Management Division of the GSD is "solely responsible for the procurement, implementation, and administration of all group benefit plans for State of New Mexico Employees and their dependents." [Verges Decl. Ex. D at 5.]  The EBB establishes a network of "Group Insurance Representatives," who are "individuals in a variety of positions who have been assigned responsibilities within their agency/entity for group insurance or group employee benefits." [*Id.*] Among the Group Insurance Representative responsibilities are accurate recordkeeping, to include maintaining "all insurance files and file folders," and maintaining "tickler files." [*Id.* at 8.]  Group Representatives are also required to schedule orientation meetings or personal communications "with all new employees to explain all benefit plan options, privacy practices and guidelines." [*Id.* at 11.]

The Guide sets out "eligibility and effective dates" and states that: "As a Group Representative, it is important for you to know who is and who is not eligible for coverage under each of the benefit plans.  Carefully study the eligibility rules listed below and applicable coverage information.  Do not allow employees to enroll anyone who is not eligible." [*Id.* at 14.] With respect to new enrollment, the Guide states that: "As a new enrollee, you are eligible for up to 3X your annual salary, not to exceed $150,000 without an EOI." [*Id.* at 17.]  For late enrollment, the Guide states as follows:

1.  Late enrollees are those individuals enrolling in Medical for the first time, after the expiration of the 31 day guaranteed acceptance period (new hire, first time enrollment of spouse or domestic partner or termination of job) must submit an Evidence of Insurability (EOI) or Medical Health

> Statement (MHS).   General qualifying events are not considered guaranteed issue.
>
> 2.   Do not start payroll deductions until you receive an approval form from the life insurance carrier.

[*Id.* at 18.][5]  The Guide further provides

> Do not start payroll deductions for life/disability late enrollees until you receive a copy of an approval from the carrier.  This approval can be obtained by accessing Standard AdminEase.

[*Id.* at 20.]  Finally, the required EOI form is available from the State's website via two paths. There is a "Medical History Statement" link on the page that contains both the Handbook and Guide, and there is a link to Standard's website, which contains the EOI form.[6]

## F.   DOCUMENTS THAT DISCLOSE EOI REQUIREMENTS

The Complaint cites or effectively incorporates by reference several documents[7] that set forth the requirement to provide EOI as a condition to "Becoming Insured" under the Policy:

> 1.   **The Policy and Certificate.**   The Policy and related Certificate of Insurance ("Certificate") both state that EOI is "required" in eight specified circumstances, including "for late application for Life Insurance ... [and] Dependent's Life Insurance" and insurance "in excess of the Guaranteed Issue Amount." [Klinkhammer Decl. Ex. A and Verges Decl. ¶ 5, Ex. E at 2-3.]  The requirement for EOI is repeated in the provisions for "Changes in Life Insurance ("an increase in your Life Insurance subject to Evidence of Insurability becomes effective on the first day of the pay period next following the date we approve your Evidence of Insurability")"; "When Life Insurance Become Effective" (same); and "Becoming Insured for Dependents Life Insurance" (same).  [*Id.* at 9-10, 12.]  The Policy and Certificate also define Evidence of Insurability

---

[5] The enrollment section of the Guide provides further detail:

> An employee who is a late enrollee for life/disability must provide "proof of insurability" by completing the Standard Life Evidence of Insurability form.  A physical exam and/or physician statement may be required.

[Verges Decl. Ex. D at 19.]

[6] The web page with the links is http://www.generalservices.state.nm.us/riskmanagement/Benefit_Information.aspx and the Standard web page for the New Mexico employees is: http://www.standard.com/mybenefits/newmexico_rmd/life_add.html

[7] These documents are not only cited in the Complaint, they are public records available at the GSD and Standard benefits web sites cited above. [Verges Decl. ¶ 2 Ex A-B.]

to mean the applicant must "complete and sign our medical history statement," sign an authorization, undergo a physical examination as required by Standard, and provide additional information as reasonably required. [*Id.* at 31.]

**2.   Employee Brochure.** The employee brochure outlines the requirement of EOI at pages 1-2 ("The effective date of your coverage depends on when you become an eligible *member*, when you apply and whether you were required to provide *evidence of insurability*" and "if you are required to provide evidence of insurability, … your Additional Life coverage becomes effective on the first day of the pay period next following the date The Standard approves your *evidence of insurability*" [Verges Decl. ¶ 6, Ex. F at 1-2.]   The Brochure provides "please contact your human resources representative for more information about *evidence of insurability* requirements." [*Id.* at 2.] The Brochure further provides "if you determine that you need more insurance than the *guarantee issue amount*, satisfactory *evidence of insurability* may be required … Satisfactory *evidence of insurability* may also be required if you apply for coverage more than 31 days after becoming eligible to apply." [*Id.* at 5-6.]

**3.   Benefits at a Glance and Handbook.** The Benefits at a Glance section of the Handbook states:  This information is only a brief description of the … Policy …  The controlling provisions will be in the group policy issued by The Standard … a group certificate of insurance that describes the terms and conditions of the group policy is available for employees who become insured according to its terms … for cost and more complete details of coverage, contact your human resources representative." [Verges Decl. ¶ 3, Ex. C at 38.]

**4.   Administrative Guide.** As set forth above, the Guide sets out in several places the EOI requirements and that premiums shall not be deducted by EBB unless and until EOI has been approved by Standard. [Verges Decl. ¶ 4, Ex. D.]

**G.   RECENT MEDIA COVERAGE**

Earlier this year, Standard denied two claims for supplemental benefits under the Policy

since the eligibility requirements had not been met and, specifically, because EOI had not been

provided.  These two disputed claims were eventually resolved, but they attracted local media

attention that reported there may have been other employees who failed to provide EOI, but for

whom premiums had been remitted in the summary bill.  Standard and the State began working

on resolving all issues surrounding the provision of EOI by employees before this case was filed

and plan to amend the Policy to ensure that no such claims are denied merely based on an employee's failure to provide EOI prior to the amendment.

**H.   THE LAWSUIT**

In an apparent attempt to capitalize on the media reports, Woods and Valdes (two current employees of the State) sued Standard, the State, and Quintana in *Brett F. Woods and Kathleen Valdes v. Standard Insurance Company, et al.*, Case No. D-101-CV-2012-03281, in the First Judicial District Court of Santa Fe County, New Mexico. Woods and Valdes speculate that they and other members of a purported class "received either no coverage in return for their premium payments or did not receive the Additional Supplemental Coverage for which they had paid premium." [Complaint ¶ 1.] Importantly, however, both Woods and Valdes are fully covered under the Policy for all coverage they elected.

Woods and Valdes assert eight causes of action against Standard: (1) breach of contract for allegedly breaching the ISC between Standard and GSD and the Handbook provided by the State to employees; (2) breach of fiduciary duty; (3) unjust enrichment; (4) breach of the duty of good faith and fair dealing; (5) breach of the New Mexico Trade Practices and Frauds Act in the Unfair Insurance Practices Act ("UIPA"); (6) breach of the Unfair Practices Act ("UPA"); (7) a declaratory judgment that Standard is obligated to provide coverage; and (8) an injunction preventing Standard from denying benefits or discontinuing coverage. [Complaint ¶¶ 50-91.] Woods and Valdes assert only two claims against the State: (1) breach of contract for unspecified breaches of the ISC and the Handbook; and (2) unjust enrichment based on the premiums collected through payroll deduction and remitted to Standard. [Complaint ¶¶ 50-58, 63-68.] Finally, Woods and Valdes assert claims against Quintana solely for an unspecified violation of

the UIPA.  [Complaint ¶¶ 74-77.]  As their remedy, Woods and Valdes seek a declaratory

judgment against Standard, injunctive relief against Standard, actual damages (in the amount

equal to the payroll deductions for premiums), punitive damages, treble damages, statutory

damages, and attorneys' fees.  [Complaint ¶¶ 58, 62, 68, 72, 77, 82, 88, 91, and Prayer.]

I.    PUTATIVE CLASS

    Woods and Valdes bring this action on behalf of a proposed class defined as:

> All employees of the State of New Mexico . . . who paid premiums
> for term life insurance and AD&D insurance and/or Additional or
> supplemental coverage under Standard's group life insurance
> policy, but for whom Standard's then contemporaneous records do
> not reflect that they are or were insureds or that they had purchased
> Additional or supplemental coverage under Standard's Group Life
> Insurance Policy.

[Complaint ¶ 42.]  Plaintiffs allege that the class consists of "many thousands of such persons."

[Complaint ¶ 43.]  This class definition as worded encompasses every premium-paying State

employee because of the inherent nature of the self-administered, summary-billed group

insurance Policy.  First, Standard does not keep contemporaneous records with all information

required to determine if any employee has "Becom[e] Insured" under the Policy, such as date of

hire, type of employment class, hours worked each week, term of employment, whether or not

the person was a late enrollee or selected additional benefits, or even what portion of the lump-

sum premium is attributable to any particular employee.  [Klinkhammer Decl. ¶ 9.]  The Policy

is a summary-billed group, meaning that the State provides consolidated premium payments

without advising Standard or providing information sufficient to determine the individual

identities of the eligible members and their respective coverages.[8]   [Klinkhammer Decl. ¶ 3-5.] Second, even with all necessary records, determining whether someone is legally "insured" under the Policy – a key element of the class definition – is an essential part of Plaintiffs' claims and requires a determination at a particular point in time whether they (1) are a Member (which is itself a legal question based on the definition in the Policy); (2) completed their Eligibility Waiting Period (another legal analysis under the Policy); and (3) met the requirements of the Policy's Life Insurance and Active Work Provisions.   [Klinkhammer Decl. Ex. A at 1-2.]   To determine whether an employee meets these requirements at any given point in time requires, at the very least, detailed employment records maintained by the State, but which are not contemporaneously maintained by Standard. [Klinkhammer Decl. ¶ 9, Ex. A at 1-2, 9-11.]   As a result, the class definition effectively includes all employees of the State or is a defective "fail safe" class that incorporates the merits of purported class claims into the definition of the class.

The difficulty of determining whether any given employee is an "insured" is perhaps best demonstrated by Valdes and Woods, for whom Standard has now obtained the necessary employment information from the State.   The State's records indicate Woods and Valdes were never required to provide EOI for their coverages and both have been and remain eligible for all coverage for which they enrolled. [Klinkhammer Decl. ¶ 10.]   Not only does this make them inappropriate representatives of the proposed class, but it highlights the overbreadth and other defects in the class definition.

---

[8] Virtually all large group insurance policies are self-administered and summary billed in order to allow large employers to provide affordable insurance coverage to employees.   Because the employee is the custodian of detailed, confidential, and constantly-evolving personnel records bearing on the eligibility issues, it is far more efficient and cost-effective for the employer to maintain eligibility information and to calculate and remit premiums.

### III. GROUNDS FOR REMOVAL

**A.   THE COURT HAS DIVERSITY JURISDICTION UNDER CAFA**

This Court has diversity jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"), because (1) minimal diversity exists; (2) the class asserts an aggregate amount in controversy of $5 million; and (3) the number of persons in the purported class exceeds 100.

**1.   There is Minimal Diversity**

Woods and Valdes are individuals who are employees and presumably citizens of the State of New Mexico, both at the time this action was filed and on the date of this removal. [Complaint ¶ 1.] According to the Complaint, at least some members of the putative class are also employees of the State who paid premiums under the Policy and, therefore, are also presumably New Mexico citizens. [*Id.*] Standard is an Oregon corporation with its principal office and place of business in Portland, Oregon, both at the time this action was filed and on the date of this removal. [*Id.* ¶ 1.] Quintana is a citizen of New Mexico. [*Id.* ¶ 8.] The State has no citizenship for purposes of CAFA and, specifically, is not a citizen of New Mexico. *See Coll v. First American Title Ins. Co.*, C.A. No. 06-348, 2008 U.S. Dist. LEXIS 112855 *17-18 (D.N.M. 2008) (noting it has been long settled that a state has no citizenship for diversity purposes, which applies equally to CAFA); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 547 (5th Cir. 2006). Because any member of the proposed class of plaintiffs is a citizen of a state different from any defendant, subject matter jurisdiction exists under 28 U.S.C. § 1332(d)(2)(A).

2.      The Amount in Controversy Exceeds $5 Million

The matter in controversy exceeds the sum or value of $5 million exclusive of interest and costs because Plaintiffs are seeking a refund of premium for a class that could encompass all State employees who paid Policy premiums.  The starting point for determining the amount in controversy is the class definition, which is defined as "all employees of the State ... who paid premiums for [various coverages] ... but for whom Standard's then contemporaneous records do not reflect that they are or were insureds or that they had purchased Additional or Supplemental Coverage under Standard's Group Life Insurance Policy."  [Complaint ¶ 42.]  First, this definition is apparently tied to a legal conclusion about whether or not each member was "insured" under the Policy.  Not only is this "fail-safe" definition improper, it necessarily includes every premium-paying State employee and all types of coverages because, as a self-administered, summary-billed group, "Standard's then contemporaneous records" do not contain the type of detailed employment information needed to determine whether a particular employee meets the test for "Becoming Insured" at any particular point in time.  As such, the class definition would effectively extend to all employees of the State, including employees who received all coverage for which they enrolled (like the Plaintiffs).  This overly broad class seeks damages in "an amount equal to the payroll deductions" for premiums remitted to Standard. [Complaint ¶¶ 68, 72, 82.]  The amount of premium paid by employees through payroll deduction for just supplemental coverages under the Policy since its effective date (potential members of the class as defined) exceeds $5 million.  [Klinkhammer Decl. ¶ 11.]

In addition to the actual damages, Plaintiffs and the proposed class seek a declaratory judgment that Standard is "obligated to provide coverage for any Class member on whose behalf

GSD and Standard accepted premium payments" and that it is further "obligated to continue providing Additional or supplemental insurance coverage equivalent to the Additional or supplemental insurance coverage that the Plaintiffs or Class member purchased." [Complaint ¶¶ 87-88.] Similarly, the proposed class seeks injunctive relief against Standard to enjoin Standard "from denying to Plaintiffs and the Class ... insurance coverage for which premiums were paid" or "from discontinuing or denying Additional or supplemental insurance coverage." [Complaint ¶¶ 90-91.] The value of the face amount of coverage at issue for the declaratory judgment and injunctive relief for all members of the class also exceeds $5 million. [Klinkhammer Decl. ¶ 12]; *see Hunt v. The Washington State Apple Advertising Communication*, 432 U.S. 333, 347 (1977) ("the amount in controversy is measured by the value of the object of the litigation" when the plaintiff seeks injunctive or declaratory relief); *Lovell v. State Farm Mutual Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (Tenth Circuit follows the "either viewpoint rule" which considers the higher of the "value to the plaintiff or the cost to the defendant ..."). Finally, the proposed class also seeks statutory damages, treble damages, punitive damages, and attorneys' fees. [Complaint ¶ 23.] In sum, while Standard contends that no class should be certified and that it has no liability to Plaintiffs or any class, the amount in controversy by any measure exceeds $5 million.

### 3.   Exceptions in CAFA Do Not Apply

Because Defendants have made a prima facie case for CAFA jurisdiction, the burden shifts to Plaintiffs to establish that a statutory exception to CAFA jurisdiction applies. *Coffey v. Freeport-McMoran Copper & Gold, Inc.*, 643 F. Supp. 2d 1257, 1263 (W.D. Okla.), *aff'd*, 581 F.3d 1240 (10th Cir. 2009); *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 153-54 (3d Cir.

2009) (joining other circuits that "uniformly concluded that once CAFA jurisdiction has been established, the burden shifts to the party objecting to federal jurisdiction to show that the local controversy exception should apply"). *Valdez v. Metropolitan Prop. & Cas. Ins. Co.*, C.A. No. Civ. 11-0507, 2012 U.S. Dist. LEXIS 56581 *121-122 (D.N.M. March 19, 2012) (finding plaintiffs did not bear their burden of establishing local controversy exception). Plaintiff cannot establish any exceptions.

### a.   "Local Controversy" Exception Does Not Apply

In a case like this where the class is composed of New Mexico citizens, the local controversy exception applies only when the plaintiff class bears its burden of proving that at least one local defendant is a defendant (a) "from whom significant relief is sought by members of the plaintiff class," and (b) "his alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. § 1332(d)(4)(A). Congress intended the "local controversy" exception to CAFA jurisdiction to be "narrow" and to accomplish that, "carefully drafted [CAFA] to ensure that it does not become a jurisdictional loophole." *Evans v. Walker Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (quoting Senate Report on CAFA, S. Rep. No. 109-14 at 39 and 42, 2005 WL 627977 (Feb. 28, 2005)). Here, the allegations in the Complaint do not establish both prongs of the test with respect to Quintana, the only "local defendant," nor against the State even if it were a local defendant (which it is not).

### i.   Quintana is not a Significant Defendant

In an obvious attempt to defeat diversity jurisdiction, Plaintiffs have named Quintana, an individual employee of Standard who happens to reside in New Mexico, as a "local defendant," but they have wholly failed to make any factual allegations against Quintana that would support

the single claim against her for unspecified violations of the UIPA.  [Complaint ¶¶ 74-77.]

Factually, Quintana's name appears in only eight out of 92 paragraphs of the Complaint.

Plaintiffs seek unspecified damages from her and do not allege joint and several liability.

[Complaint ¶ 77.] The sole factual allegations against Quintana are that she is "Standard's locally

based employee in the State of New Mexico who is responsible for providing account

management and customer service to the State of ..." and "did not require Plaintiff or the Class

to submit medical history statements or other evidence of insurability to Standard ... ."

[Complaint ¶¶ 8, 36.]  Importantly, Plaintiffs do not allege that they or any other member of the

class had any contact with Quintana or that she made any affirmative misrepresentations or

engaged in any conduct other than by omission. On the contrary, Quintana is merely alleged to

be Standard's employee responsible for providing customer service to GSD, based on which

Plaintiffs conclusorily allege that she "knowingly" or "willfully" violated the UIPA by

"engaging in deceptive acts or fraud as described above" or "making deceptive or misleading

claims in publications concerning insurance." [Complaint ¶ 76.] Plaintiffs' allegations do not

come close to stating a viable claim under Fed. R. Civ. P. 8(a), 9(b), or 12(b)(6).  *See Bell*

*Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (naked assertions will not suffice and

conclusory statements unsupported by factual content are not accepted as true; rather, a claim

must contain sufficient factual matter, which, if accepted as true, "nudges [the] claim crosses the

line from conceivable to plausible"); *see also Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d

1174, 1177 (10th Cir. 2007).  Because Plaintiffs allege Quintana engaged in "deceptive acts or

fraud," the complaint must also "set forth the time, place, and contents of the false

representation, the identity of the party making the false statements and the consequences

thereof." *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000); *Skyline Potato Co. v. Tan-O-On Mkts, Inc.*, C.A. No. 10-0698, 2012 U.S. Dist. LEXIS 99413 *44-49 and 115-116 (D.N.M. July 4, 2012) (claim under UPA requires heightened pleading if fraud-based). Conspicuously absent from the Complaint is any allegation against Quintana supporting the "who, what, when, where, and how" of any alleged deceptive or fraudulent act which would support a cause of action against her. Nor is there sufficient detail to determine which sections of the UIPA Quintana is alleged to have violated. *Skyline Potato*, 2012 U.S. Dist. LEXIS at *118-119 (plaintiff failed to state a claim under UIPA when "there is no attempt to set forth the elements of a specific statutory cause of action under the [UIPA], a lengthy statute ... containing approximately thirty-six different statutory sections ... proscribing a variety of different conduct") (citing *Estate of Gonzalez v. AAA LLC, Inc. Co.*, C.A. No. 11-0486, 2012 U.S. Dist. LEXIS 48679, *54-56 (D.N.M. March 8, 2012)). Whether governed by Rule 8 or 9(b), Plaintiffs, at most, have made "formulaic recitations of the elements of a cause of action," which is insufficient to state a claim against Quintana. *Twombly*, 127 S. Ct. at 1969; *Estate of Gonzalez*, 2012 U.S. Dist. LEXIS 48679 *59-60. In the absence of a viable claim against Quintana, she cannot be a "significant" defendant.

Even if the claim could survive a Rule 12(b)(6) review, as a mere employee of Standard at most allegedly performing some of the very acts on which the claims against Standard are based[9], Quintana cannot remotely be described as a defendant against whom "significant relief"

---

[9] In fact, Quintana never had, to her recollection, any contact of any kind with Plaintiffs and certainly has not had contact with all State employees. Moreover, Quintana does not enroll State employees in any Policy coverages or obtain any necessary records, including EOI. Finally, Quintana has no responsibility or authority to make any determinations about eligibility or claims under the Policy. [Quintana Decl. ¶¶ 2-5.] The Declaration of Martha Quintana is attached as Exhibit 3.

is sought or whose conduct forms a "significant basis" for the claims. *See, e.g., Coffey*, 623 F. Supp. 2d at 1265 (courts generally have required that the local defendant's conduct be significant compared to the alleged conduct of the other defendants"); *Evans*, 449 F. 3d at 1167 (noting that "significant relief" means "when the relief sought against that defendant is a significant portion of the entire relief sought by the class"). The inquiry for whether "significant relief" is requested from Quintana must be made relative to the other defendants. *See Valdez*, 2012 U.S. Dist. LEXIS 56581 at *126 ("all relief is significant to the plaintiff, so the only way that the phrase makes sense is to interpret it in a relative way: is the relief sought against the local defendant significant in comparison to the relief sought against the diversed defendants"). Comparatively speaking, a claim against an insurance agent – or here, an employee – as opposed to a claim against the insurance company is almost never a significant claim. As the Senate Report explained:

> [I]n a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit this criteria. He or she would probably have had contact with only some of the purported class members and thus would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole. Obviously from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself.

*Id.* (citing S. Rep. No. 109-14 at 40, 2005 WL 627977). Quintana, as an employee who is not alleged to have had any contact with Plaintiff, is an even more compelling example of the type of local defendant from whom significant relief is not sought, particularly relative to the premium refund and injunctive/declaratory relief sought against her employer, the insurance company.

ii.     **Even if It Were a Local Defendant,**
        <u>**Significant Relief is Not Sought Against the State**</u>

Although the State is not a "local defendant" and should not be considered in the analysis

of the local controversy exception (*see Coll* discussed above), it is still not a defendant from

which significant relief is sought by the proposed class.   As with Quintana, the factual

allegations against the State in the Complaint are limited to its role in the collection of premiums

and the administration of the Policy.  [Complaint ¶¶ 2-3, 9.]  The basic allegations against the

State focus on its responsibility for administering the Policy -- the State collected premium by

payroll deduction "in trust," remitted that premium to Standard, and allegedly failed to advise the

employees that they were required to provide EOI in certain situations.  Plaintiffs and the Class

have asserted only two out of eight causes of action against the State for breach of contract and

unjust enrichment, and joint and several liability is not alleged.  Neither claim is viable nor

constitutes a significant part of the relief sought in the Complaint.

The State is not a significant defendant because the breach of contract claim against the

State fails as a matter of law.  The only two contracts which the Complaint alleges the State

breached were the Handbook and the ISC.  Plaintiffs allege that the State breached the Handbook

"by failing to completely, accurately, and truthfully describe the coverages and eligibility

requirements to the Plaintiffs and the Class to obtain coverage" under the Policy and "failing to

state material facts concerning the coverages and eligibility requirements" under the Policy.

[Complaint ¶¶ 56-57.] In other words, Plaintiffs contend that the State breached the Handbook

by misstating the Policy.  This does not constitute a breach of contract. *See Geter v. St. Joseph*

*Healthcare Sys.*, 2011 N.M. App. *unpub.* LEXIS 150, *6-8 (N.M. Ct. App. March 10, 2011).  In

*Geter*, as here, the employee handbook expressly stated, "[T]he information in this handbook is

intended as a brief review of the various plan benefits. For more information, see the [policy] for the appropriate benefit." Where the more specific terms of the insurance policy are expressly incorporated into the employee handbook's terms, the contract at issue is defined by construction of the two documents together. *Id.* (citing *Master Builders, Inc. v. Cabbell*, 95 N.M. 371, 374, 622 P.2d 276, 279 (Ct. App. 1980)). Here, the Handbook expressly cautions "this information is only a brief description of the ... Policy," and advises that the controlling provisions are in the Policy and in the Certificate, both of which were distributed to the employees through the website referenced in the Handbook. Because the requirement of EOI was clearly stated on the face of the Policy and the Certificate, not to mention numerous other documents on the same website, the State could not have breached the Handbook "by failing to completely, accurately, and truthfully describe the coverages."

The State also could not have breached the ISC. Conspicuously absent from the allegations in the Complaint is that the State had any contractual responsibility or made any contractual promises to Plaintiffs or the proposed Class under the ISC. [Complaint ¶¶ 18-25.] Rather, the ISC merely addresses Standard's responsibilities to the State. [Verges Decl. Ex. B.] The "breaches" of the ISC alleged by Plaintiffs are the State's acceptance of premiums without providing life insurance coverage. [Complaint ¶ 53.] Even if true, the State owed no such contractual duty to its employees under the ISC or otherwise. [Verges Decl. Ex. B.] It is undisputed that the State does not receive or keep premiums, nor does the State have any responsibility for making claims decisions or paying life or AD&D benefits to employees under the Policy; rather, those functions are reserved exclusively to Standard. [Klinkhammer Decl. ¶¶ 6-7.]

Even if the ISC was enforceable against the State, Plaintiffs and the class are not third-party beneficiaries of the contract and, therefore, cannot sue for its breach. Plaintiffs are, at most, incidental beneficiaries of the ISC and, as such, have no standing to assert contract claims based on the ISC.

The general rule in New Mexico is that only a party to a contract has standing to sue for breach of its terms. *See Montoya v. Espanola Public School District Bd. of Education*, 861 F. Supp. 2d 1307, 1311 (D.N.M. 2012); citing *Kroekel v. United States Marshal's Service*, C.A. No. 98-N-983, 1999 U.S. Dist. LEXIS 23399, *16 (D. Colo. May 20, 1999). A third party who is the intended beneficiary of a contract may also have standing to sue, but only if the contract expressly indicates an intent to confer such a right. *Montoya*, 861 F. Supp. 2d at 1311. Receiving a benefit by virtue of a contract is not enough – "the plaintiffs must be the *intended* beneficiary of the contract in order to be considered third-party beneficiaries" with standing to sue. *Id.* at 1312 (emphasis in original). Standing to sue as a third-party beneficiary is a matter of law determined from the face of the contract at issue. *Id.* at 1312.

In *Montoya*, students of the defendant school district filed suit against the security companies who provided security to the school district pursuant to annual security contracts. *Id.* at 1311. The security contract required the defendant contractors to provide a safe and secure learning environment and to maintain "a sense of peace, order, and discipline which promotes learning and empowers students, faculty, and staff to excel in the educational careers." *Id.* at 1311. The court concluded that, while the agreement conferred a benefit on the plaintiff students, it did not confer a right for the students to enforce the contract. *Id.* at 1312. As the court explained:

> To be sure, students (as well as teachers and staff in the School) end up benefitting from Defendants carrying out their duties under the contract. The language of the contract describes the general benefits conferred on students, teachers and staff as a result of Defendants performing their duties under the contract, and describes the objectives behind the services they offer and intend to provide. However, the language in the contract cannot fairly be read to allow these incidental beneficiaries the right to enforce the contract. Under New Mexico law, the Plaintiffs must be *intended* beneficiaries of the contract in order to be considered third-party beneficiaries. Incidental benefits are not enough to create a third-party beneficiary status.

*Id.* at 1311-12.

In *Kroekel*, the court reached the same result in a case brought by a former U.S. Marshal whose employment was terminated by the General Security Services Corporation under a contract with the U.S. Marshal's office. 1999 U.S. Dist. LEXIS 23399, *16. The terminated marshal relied on language in the security contract that set out guidelines for termination of personnel and claimed that the language was intended to benefit all of the marshals hired pursuant to the terms of the security contract. The Court recognized the unique nature of the government-contractor relationship and the purpose of the security contract to allow the government to obtain administrative services in connection with managing its personnel. *Id.* The Court concluded that the plaintiff was an incidental beneficiary of the contract, but "'there must also be a showing of an intent that the promisor shall assume a <u>direct</u> obligation to the third-party' for the party to qualify as a third-party beneficiary." *Id.* at *59 (emphasis added).

Here, the ISC is a similar government-contractor administrative contract. The ISC is clearly intended to benefit the State by requiring Standard to provide resources to assist the State with providing insurance under the group Policy. Indeed, the ISC specifically provides that "the Contractor [Standard] and its agents and employees are independent contractors performing

professional services <u>for the Agency</u>." [Verges Decl. Ex. B. ¶ 10.] Conspicuously absent from the ISC is any express statement of intent that the ISC be enforceable by individual employees against either the State or Standard. As such, Plaintiffs and the proposed class are merely incidental beneficiaries of the ISC who lack standing to file suit against the State for breach of the ISC as a matter of law. As such, the State is not a significant defendant for the breach of contract claims.

With respect to the unjust enrichment claim, Plaintiffs use the collective "Defendants" in alleging that "Defendants have been unjustly enriched in the amount of the payroll deductions made from the plaintiffs and the Class for which no life or AD&D coverage ... was provided in return." [Complaint ¶ 67.] To maintain an unjust enrichment claim against the State, Plaintiffs and the class must establish (1) that the State has knowingly benefitted at their expense; and (2) it would be unjust to allow the State to retain the benefit. *See Ontiveros Insulation Co. v. Sanchez*, 129 N.M. 200, 203, 3 P.3d 695, 698 (Ct. App. 2000). It is axiomatic that to be liable for unjust enrichment, a party must actually have retained the benefit at issue. *See Bowlin's, Inc. v. Ramsey Oil Co.*, 662 P.2d 661, 673 (N.M. Ct. App. 1983).

Here, however, the State is not in possession of any of the premiums collected by payroll deductions and, therefore, could not have benefitted or been enriched by them, unjustly or otherwise. On the contrary, the State was merely an intermediary that facilitated the transfer of premium from employees to Standard. As the only party from which premiums could be refunded, Standard is the only Defendant from which significant relief is sought and the "local controversy" exception does not apply.

b.     The "State Action" Exception Does Not Apply

It is anticipated that Plaintiffs will assert the "state action" exception to CAFA, which provides:

> The primary defendants are States, State officials, or other governmental entities against whom the District Court may be foreclosed from ordering relief.

28 U.S.C. § 1332(d)(5). Plaintiffs cannot satisfy this exception for several reasons. First, the State is not a "primary defendant" for the reasons stated above. Second, even assuming that the State is a "primary defendant," the "state action" exception does not apply because Standard, also a primary defendant, is not a state entity. *See Coll*, 2008 U.S. Dist. LEXIS 112855 at *15 (concluding the state action exception does not apply when one defendant is a state and another primary defendant is not); *Frazier*, 455 F.3d at 546 (requiring that all primary defendants be state entities for the state action exception to apply). In *Coll*, this Court considered the issue of "whether the statute requires that *all* primary defendants be state entities or officials." *Id.* at *15. Citing the Fifth Circuit's decision in *Frazier*, the court determined that "Congress's choice of the phrase 'the primary defendants' requires that *all* primary defendants be state entities or officials in order for the state action exception to apply." *Id.* at *16 (emphasis added); *see also Anthony v. Small Tube Manufacturing Corp.*, 535 F. Supp. 2d 506, 515 (E.D. Pa. 2007) (applying a similar analysis to same language in the "home state" exception in Section 1332(d)(4)(B) and concluding "as evident from the statute's use of the phrase '*the* primary defendants' rather than '*a*' primary defendant, the plain language of the statute requires remand only when *all* of the primary defendants are residents of the same state in which the action was originally filed") (emphasis in original; internal quotations omitted); *Escoe v. State Farm Fire & Cas. Co.*, C.A.

No. 07-1123, 2007 U.S. Dist. LEXIS 30088 *3 fn. 2 (E.D. La. April 23, 2007) (rejecting application of "home state" exception because the primary insurance company defendant was not a citizen of the state).   Based on the foregoing, even if the State is considered a "primary defendant," the "state action" exception does not apply given that Standard is also a primary defendant and not a citizen of New Mexico.

c.     **CAFA's "Home State" Exception Does Not Apply**

For the same reasons stated above, the "home state" exception under 28 U.S.C. § 1332(d)(4)(B) also does not apply because, applying the same rationale as the state action exception, all primary defendants must be New Mexico citizens, which Standard is not. *See Coll*, 2008 U.S. Dist. LEXIS 112855 *19-20 ("because none of the title insurer defendants are citizens of New Mexico, remand is not required under the 'home state exception' ... which applies only where all primary defendants are citizens of the State in which the action was filed").

d.     **The "Interests of Justice" Exception Does Not Apply**

Finally, the "interests of justice" exception does not apply because Plaintiffs cannot meet their burden to establish that the class is one "in which greater than one-third but less than two-thirds of the members" are citizens of New Mexico; and (2) the primary defendants are "citizens" of New Mexico. 28 U.S.C. § 1332(d)(3). First, more than two-thirds of the class are New Mexico citizens. Second, as discussed above, the State is not a "citizen" of New Mexico for purposes of CAFA. *Coll*, 2008 U.S. Dist. LEXIS 112855 *19-20. In addition, as with the "state action" and "home state" exceptions, the reference to "*the* primary defendants" requires

that *all* primary defendants be citizens of New Mexico, which is not the case here.  As such, the "interests of justice" exception is inapplicable.

**B.      PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED**

As set forth above, the Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).  Accordingly, this action may be removed pursuant to 28 U.S.C. § 1441.  In addition, removal is timely under 28 U.S.C. § 1446(b) as summons was first served on Standard on December 11, 2012.

A copy of the file from the state court lawsuit is attached as Exhibit 4.  Pursuant to L.R. 81.1(a), Standard will file copies of any other documents filed in the state court action within 28 days after filing this notice of removal.

**C.      CONSENT IS NOT REQUIRED**

Consent from Quintana and GSD is not required under 28 U.S.C. § 1453.  However, out of an abundance of caution, Quintana has nevertheless filed her consent to removal.

## IV.  RELIEF REQUESTED

Standard respectfully requests that the United States District Court for the District of New Mexico accept this Notice of Removal, assume jurisdiction of this cause, and grant such other and further relief as to which Standard may be entitled.

Respectfully submitted,


By: /s/ W. Mark Mowery
    W. Mark Mowery

**RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.**
315 Paseo de Peralta
Santa Fe, New Mexico 87501
(505) 954-3907 - telephone
(505) 954-3942 - facsimile
mmowery@rodey.com

**FIGARI & DAVENPORT, L.L.P.**
Keith R. Verges
Jill B. Davenport
3400 Bank of America Plaza
901 Main Street
Dallas, Texas  75202
(214) 939-2000 - telephone
(214) 939-2090 - facsimile
keith.verges@figdav.com
jill.davenport@figdav.com

ATTORNEYS FOR DEFENDANT
STANDARD INSURANCE COMPANY
AND MARTHA QUINTANA


## CERTIFICATE OF SERVICE

I certify that all attorneys deemed to accept service of the above-referenced document electronically will be notified via the Court's CM/ECF system and all others will be notified via certified mail, return receipt requested on this 28th day of December, 2012.


        /s/ W. Mark Mowery
        W. Mark Mowery